UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

MEMORIAL HERMANN HEALTH SYSTEM,

       Plaintiff,

v.

       C.A. No. _____

HEALTH CARE SERVICE CORPORATION,
A MUTUAL LEGAL RESERVE COMPANY,
d/b/a BLUE CROSS BLUE SHIELD OF
TEXAS,

       Defendant.

## PLAINTIFF'S ORIGINAL COMPLAINT

Plaintiff Memorial Hermann Health System ("Memorial Hermann") files this Original Complaint against Defendant Health Care Service Corporation, a Mutual Legal Reserve Company d/b/a Blue Cross Blue Shield of Texas ("BCBS").

### 1.  NATURE OF THE ACTION

1.  This case involves an insurance company prioritizing profits over patient well-being and its obligation to pay for emergency and subsequent care.  After losing more than $400 million on Affordable Care Act ("ACA") Exchange plans in Texas in 2014, and over $300 million on individual market plans in Texas in 2015, BCBS improperly sought to shift some of these losses to Memorial Hermann by wrongly denying hundreds of valid Blue Advantage and MyBlue Health claims (the "BAV Claims") for emergency services and post-stabilization care.  Although BCBS resolved the bulk of its misconduct through a lawsuit Memorial Hermann filed in 2017[1], BCBS now again has refused to properly reimburse Memorial Hermann for BAV

---

[1] This case is related to *Memorial Hermann Health System v Health Care Service Corp.*, Case No. 4:17-CV-2661, that was pending before Judge Sim Lake in the United States District Court for the Southern District of Texas.

Claims. As a result of BCBS's continuing improper conduct, Memorial Hermann has suffered more than $3 million in damages.

2.      In late 2013, BCBS agreed to pay Memorial Hermann at an agreed rate for healthcare provided to BCBS's members who came to Memorial Hermann with emergent medical conditions (the "BAV HMO Agreement").   In accordance with the BAV HMO Agreement, between January 2014 and June 2015, BCBS generally paid Memorial Hermann for the care it rendered to thousands of BAV members, whether in the emergency room or upon admission to the hospital for emergent or continuing treatment.   However, after BCBS suffered more than $400 million in losses on the ACA Exchange in Texas in 2014, BCBS decided in mid-2015 to begin breaching the BAV HMO Agreement in earnest and as a result increased its denials for anything beyond what BCBS deemed "emergency care", on the basis that Memorial Hermann is "out-of-network" for BAV members.

3.      BCBS's belated position was that Memorial Hermann must force BCBS BAV members who came to Memorial Hermann in an emergent condition out of a Memorial Hermann facility, requiring them to leave Memorial Hermann and transfer to an "in-network" hospital so that BCBS can save money, even if it disrupts the patient's continuity of care, endangers patient safety, and subjects Memorial Hermann to potential liability for improper transfers or medical malpractice.

4.      As a result of BCBS's change in position in mid-2015, BCBS substantially increased its denials of payment for anything beyond what BCBS unilaterally deemed to be "emergency" care, going from approximately one such denial per month, on average, to approximately 40 such denials per month, on average.  If, as BCBS insisted, the BAV members had been transferred to an in-network facility for continuing care, BCBS still would have had to

pay the in-network provider for those services. However, under BCBS's view of the world, BCBS did not have to pay anything at all and could shift the cost of continuing related medical care to its own BAV members (by denying benefits) or to Memorial Hermann (by denying claims).

5.      BCBS's improper claim denial policy not only financially injured Memorial Hermann and unjustly enriched BCBS, but it also endangered patient care and safety, as shown in one example of BCBS's denials from the prior lawsuit:  patient A suffered an open fracture of her lower left leg, a closed right lower leg fracture, broken ribs, and internal bleeding. Patient A was first taken to another hospital, but the physician at that hospital decided to transfer patient A to a Memorial Hermann emergency room for trauma care, declaring the transfer a medical emergency. As a medical emergency, Memorial Hermann was not permitted to check insurance benefits or redirect patient A to another facility based on insurance coverage. Upon arrival at Memorial Hermann, patient A went directly to the operating room for surgery.  Following surgery, patient A required continuing care and was admitted to the Memorial Hermann hospital for that continued care. BCBS was notified that patient A was being admitted, and did not deny coverage. When it was medically appropriate, patient A was discharged from the hospital after 14 days.

6.      Memorial Hermann provided $261,156.30 in medical treatment to patient A. BCBS, however, paid just $4,672.35, claiming that patient A should have been transferred to a BCBS "in-network" hospital right after coming out of surgery. BCBS apparently believed that, even though BCBS did not object to Memorial Hermann treating patient A at the time, Memorial Hermann should have forced patient A from the hospital right after surgery -- regardless of the physician's or patient's belief about what was in the patient's best interests, and even though

3

such a transfer would have been nearly impossible because physicians  generally are unwilling to accept transfer of trauma patients because they require continuity of care at the treating facility. It clearly was not in patient A's best interests to be transferred right after such significant surgery, but BCBS apparently believes that Memorial Hermann should forcibly discharge BAV patients like patient A -- even against physician's recommendations or the patient's will -- once the patient has been "stabilized" in the emergency room.  BCBS's after-the-fact denial policy is premised on the notion that reduced financial cost to BCBS is more important than patient well-being.

7.       Memorial Hermann sued BCBS in 2017, ultimately seeking more than $30,000,000.00 in damages for BCBS's improper claim denials and breaches of the BAV HMO Agreement.  The parties resolved that lawsuit in 2019.

8.       BCBS's continued breaches of the parties' agreement and failures to comply with Texas law have cost Memorial Hermann more than $3 million in additional health care reimbursements for approximately 100 additional BAV members who came to Memorial Hermann with emergency conditions, which were not part of the prior lawsuit.

## 2.     PARTIES

8.       Memorial Hermann is a Texas corporation with its principal place of business in Houston, Harris County, Texas.  Memorial Hermann can be notified through its attorneys, Smyser Kaplan & Veselka, L.L.P., 717 Texas Ave., Suite 2800, Houston, Texas, 77002.

9.       Defendant Health Care Service Corporation, a Mutual Legal Reserve Company d/b/a Blue Cross Blue Shield of Texas is a corporation with its principal place of business in Illinois.  BCBS can be served through its registered agent, Corporation Service Company, 211 E. 7th St., Suite 620, Austin, TX 78701-3218.

3.      **JURISDICTION AND VENUE**

10.      This Court has jurisdiction over this action under 28 U.S.C. § 1332(a)(1) because there is complete diversity between the parties and the amount in controversy exceeds $75,000, exclusive of interests and costs.

11.      Venue is proper in this district under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to Memorial Hermann's claims occurred in this district.

4.      **FACTUAL BACKGROUND**

12.      Memorial Hermann is entitled to reimbursement for the unpaid BAV Claims. BCBS properly paid the BAV claims for 18 months before losing hundreds of millions of dollars in its Exchange plans.  Memorial Hermann filed a lawsuit and resolved BCBS's misconduct. BCBS, though, has again refused to properly pay BAV Claims for approximately 100 additional patients.

**A.      Relationship between Memorial Hermann and BCBS.**

13.      Memorial Hermann is the largest non-profit, charitable healthcare system in Southeast Texas.  BCBS offers, issues, and administers health insurance plans.

14.      Persons covered under insurance policies issued or administered by BCBS and its affiliates ("insureds") receive health care services at Memorial Hermann.  The insurance benefits are governed by a number of different types of agreements between the individual patients and BCBS or an employer health plan administered by BCBS.

15.      Separate from these insurance policies between BCBS and its insureds, BCBS and Memorial Hermann entered into agreements that govern compensation and billing for BCBS's Health Maintenance Organization ("HMO") and Preferred Provider Organization ("PPO") Program Participants. These agreements provide BCBS with a contractual discount from

Memorial Hermann's usual and customary charges when BCBS's HMO or PPO Program Participants receive medical or health services at Memorial Hermann's facilities.

16.     Upon signing these agreements, Memorial Hermann became an "in-network" facility for BCBS's HMO and PPO insureds, entitling them to discounted fees.  The general rationale for these contractual discounts is volume; BCBS will incentivize its insureds to visit in-network facilities and increase the number of patients being treated at Memorial Hermann by providing superior insurance benefits to its insureds who are treated in-network versus "out-of-network."

17.     BCBS also has insureds who are not HMO or PPO Program Participants.  Some of these insureds are covered by fully-insured indemnity plans ("Indemnity Plans"), which are substantively different from HMO or PPO insurance plans.  Indemnity Plans do not participate in a provider network and have only one level of co-insurance.  Whether treated at an in-network or out-of-network facility, the beneficiary's co-insurance obligation is the same.

18.     In May 2005, Memorial Hermann and BCBS entered into the "Hospital Contract for Traditional Indemnity Business" ("Indemnity Contract").  It provides a discounted rate for insureds covered by BCBS Indemnity Plans, known as the PAR rate.  This rate has consistently been applied to the entire claim for all services provided by Memorial Hermann to a BCBS insured covered by an Indemnity Plan, not just to emergency services.

19.     When the Indemnity Contract was negotiated and signed, it was contemplated and agreed that it would cover reimbursement only for medical services provided to members of BCBS Indemnity Plans.

6

**B.**     **BCBS begins offering the Blue Advantage HMO Plan.**

20.     In late 2013, BCBS began offering health insurance plans over the Exchanges created under the ACA, with an effective start date of January 1, 2014.  ACA Exchange plans are not covered by the Employee Retirement Income Security Act ("ERISA").  One of those ACA plans offered by BCBS was the Blue Advantage HMO plan ("BAV Plan").

21.     When the BAV plan was introduced, BCBS excluded the BAV plan from its HMO contract with Memorial Hermann.  BCBS wanted to reimburse Memorial Hermann for care provided to BAV members at lower rates, and Memorial Hermann did not agree to those rates.  Thus, BCBS initially designated Memorial Hermann as "out-of-network" for BAV Plan members.

22.     However, despite Memorial Hermann being "out-of-network" for the BAV plan, a BAV insured that presents to a Memorial Hermann emergency room or with an emergency medical condition must be treated.  Under the federal Emergency Medical Treatment and Active Labor Act ("EMTALA"), Memorial Hermann has a statutory duty to provide emergency services and care to all individuals, including members and insureds of BCBS, who present to its emergency departments with potentially life-threatening conditions, without regard to the patients' ability to pay or their possession of insurance benefits.

23.     Under the Texas Insurance Code, BCBS must "pay for emergency care performed by non-network physicians or providers at the usual and customary rate or at an agreed rate." Tex. Ins. Code § 1271.155(a).  In addition, BCBS must "approve or deny coverage of post-stabilization care as requested by a treating physician or provider within … one hour of the time of the request."  Tex. Ins. Code. § 1271.155(c).

24.     When a BAV insured comes to a Memorial Hermann emergency room, Memorial Hermann verifies the patient's insurance coverage and eligibility electronically with BCBS.  If

there is a subsequent change in the patient's status, such as being admitted to the hospital for continuing care, Memorial Hermann reasonably notifies BCBS of the change in status, provides the patient's chief complaint or diagnosis, and requests authorization or approval for treatment. Typically, BCBS responds with any questions it had or additional information it wants and informs Memorial Hermann that authorization or approval for the treatment is pending, but does not refuse or object to the treatment of the patient at Memorial Hermann.  In other words, BCBS does not deny the request for approval within one hour as required by the Texas statute.  As a result, BCBS must pay for all care, whether emergency or post-stabilization, that Memorial Hermann provides to such BAV Plan insureds.  If BCBS were to deny authorization, however, then it would be incumbent upon BCBS to coordinate a transfer of the patient to another facility in BCBS's network and provide transfer instructions to Memorial Hermann.

**C.      For 18 months, BCBS paid for BAV Plan members' treatment at the agreed rate.**

25.     Because Memorial Hermann was initially considered "out-of-network" for the BAV Plan, there was no contractual discount for BCBS when the BAV Plan was introduced effective January 1, 2014.  Under the typical "out-of-network" scenario, the payor (e.g., BCBS) must reimburse the healthcare provider at its usual and customary rate, i.e. 100% of its billed charges.

26.     However, in late 2013, before the BAV Plan took effect, BCBS took the position that it could pay the discounted PAR rate from the separate Indemnity Contract for treatment that Memorial Hermann provided to BAV Plan insureds who presented at Memorial Hermann's emergency room or with emergency conditions that Memorial Hermann was required to treat. Initially, Memorial Hermann disagreed and maintained that BCBS was not entitled to access the PAR rate to pay for treatment provided to BAV insureds who came to Memorial Hermann through the emergency room or with emergency conditions.  However, through negotiation in

8

late 2013, the parties agreed that BCBS could pay the PAR rate to reimburse Memorial Hermann

for BAV Plan insureds who were treated at Memorial Hermann because they presented to the

emergency rooms or with an emergency condition (the "BAV HMO Agreement").

27.     As a result, for BAV insureds treated at Memorial Hermann from January 2014

through mid-2015, BCBS generally reimbursed Memorial Hermann at the PAR rate for

healthcare services its BAV Plan insureds received, both in the emergency room and in the

hospital upon admission for continuing care and treatment.  Per its typical practice, when a

patient required observation or inpatient admission, BCBS responded to Memorial Hermann's

request for approval that its approval was "pending," and did not deny coverage.  Consistent with

the BAV HMO Agreement, after the patient was treated BCBS generally reimbursed Memorial

Hermann for all of the services provided at the agreed-upon rate and did not draw any distinction

between emergency care and post-stabilization care in Memorial Hermann's emergency rooms

and in hospitals upon admission for continuing care and treatment.

28.     For approximately 18 months, BCBS generally did not deny Memorial

Hermann's claims for all treatment that Memorial Hermann provided to these BAV insureds, at

the agreed-upon PAR reimbursement rate.  There were thousands of claims during this time

period for which BCBS paid millions of dollars at the PAR rate, pursuant to the BAV HMO

Agreement.  BCBS did not question a BAV Plan insured's admission to Memorial Hermann for

ongoing treatment relating to or resulting from the insured's emergency condition.  BCBS did

not require its BAV insureds to be transferred to an in-network facility, locate and coordinate the

transfer to an in-network facility, or provide transfer instructions to Memorial Hermann in order

to transfer these BAV Plan insureds to an in-network facility.  BCBS instead generally paid the

1196262.4

claims for all of the services that Memorial Hermann provided to BAV insureds, both in the emergency department and in the hospital.  This changed starting in mid-2015, however.

**D.      BCBS breached the BAV HMO Agreement by refusing to pay BAV Claims.**

29.      In July 2015, BCBS notified its customers and agents that it had lost more than $400 million on its ACA Exchange products in Texas for the year 2014.  In other words, when setting its premium rates for the forthcoming new Exchange products in Texas, BCBS underestimated potential claims for healthcare for the upcoming 2014 year and ended up paying out $400 million more than it collected in premiums in Texas that year.  As a result of this huge loss in 2014, BCBS stopped offering its PPO plan on the ACA Exchange and raised the 2016 premiums for the remaining HMO plans by approximately 20%.  After suffering large losses again in 2015, BCBS raised its premiums for the HMO plans by nearly 60% for 2017.

30.      Beginning in 2015, BCBS began looking for ways to recoup these losses. Therefore, it was no coincidence that in mid-2015, BCBS began denying hundreds of  claim payments for treatment that Memorial Hermann provided to BAV plan members who came to Memorial Hermann with emergency conditions.  Contrary to the BAV HMO Agreement and to the parties' conduct and course of performance for the previous 18 months, for hundreds of claims BCBS began paying only for what BCBS deemed, after the fact, to be "emergency care" and denying claims for what BCBS deemed to be "post-stabilization treatment."

31.      BCBS's justification for denying hundreds of Memorial Hermann's claims (after 18 months of generally paying them) was that BAV Plan insureds were required to obtain healthcare services from in-network providers Contrary to the BAV HMO Agreement and to BCBS's practice for 2014 and the first half of 2015, in mid-2015 BCBS began claiming that Memorial Hermann was required to transfer BAV plan members to a different, in-network facility once the patient's condition had (in BCBS's post-hoc opinion) stabilized—even if the

patient did not want to be transferred.  When Memorial Hermann asked BCBS whether it was supposed to transfer BAV plan members to different facilities against their will, BCBS responded "that's what you have security for."

32.    BCBS's position is incorrect and contradicted by Texas law, the BAV HMO Agreement, and the parties' conduct and course of dealing.

33.    By denying Memorial Hermann's claims and refusing to pay the PAR rate, BCBS violated the BAV HMO Agreement and the parties' conduct and course of dealing over the prior 18 months.  BCBS also violated Texas law which required BCBS to pay an out-of-network provider for "emergency care" at the "usual and customary rate" or at an "agreed rate."  Tex. Ins. Code § 1271.155(a).

34.    Texas law requires BCBS to pay an out-of-network provider for "emergency care" at the "usual and customary rate" or at an "agreed rate."  Tex. Ins. Code § 1271.155(a). Here, the agreed rate is the PAR reimbursement rate.  Thus, BCBS must pay for all "emergency care" provided to BCBS's BAV members at that rate.

35.    With respect to care provided after a patient is "stable," the standard of what constitutes "stable" is difficult to ascertain or to formulate a general rule about because there are several different clinical definitions of stable, and the ultimate question of stability is one for a physician to determine (for which there can be differences of opinion among physicians). Moreover, if Memorial Hermann transfers a BAV insured to an "in-network" facility just because BCBS unilaterally deems, without physician review, that the patient is "stable," the patient's continuity of care will be disrupted and Memorial Hermann could face liability under EMTALA or Texas law for an improper transfer and/or medical malpractice.  BCBS cannot dictate medical outcomes simply because its BAV insureds presented to Memorial Hermann with

1196262.4

an emergent condition and needed additional, related and continuing care in the hospital for which BCBS does not want to pay (even at the agreed discounted PAR reimbursement rate).

36.     Regardless of the definition or determination of stability, however, Texas law requires BCBS to approve or deny coverage for "post-stabilization" treatment provided by Memorial Hermann within one hour of Memorial Hermann's request.  Tex. Ins. Code § 1271.155(c).  BCBS cannot designate the Memorial Hermann request for authorization or approval of treatment as "pending" and then later deny payment based upon a BCBS post-hospitalization decision that, from BCBS's perspective, the patient was "stable" and could have been forced out of Memorial Hermann to another facility.

37.     BCBS did not comply with the Texas law that requires approval or denial within one hour of the request.  *See* Tex. Ins. Code § 1271.155(a).  And BCBS agreed to pay Memorial Hermann for the care provided to BAV members at the agreed-upon PAR rate.  As a result, BCBS must pay for all services provided by Memorial Hermann to BAV insureds who present to a Memorial Hermann facility with an emergent medical condition, whether or not BCBS subsequently (as part of a post-hoc claims review process) unilaterally characterizes some of the services provided by Memorial Hermann as "post-stabilization" treatment.  BCBS cannot require Memorial Hermann to provide free medical care to its BAV insureds simply because BCBS takes a "wait and see" approach to approving payment of medical care for BAV insureds that come to Memorial Hermann for emergency care.

38.     Altogether, before the prior lawsuit, BCBS refused to reimburse Memorial Hermann for millions of dollars for medical treatment and services provided to over 1,200 BAV Plan members who were treated in Memorial Hermann's emergency departments.  Memorial Hermann made several demands for payment, all of which BCBS refused.  Consequently, on

12

September 3, 2017, Memorial Hermann filed suit against BCBS seeking to recover payment for medical services provided to these BAV Plan members ("2017 Lawsuit").  *See* Case No. 4:17-cv-02661, Dkt. 1, in the United States District Court for the Southern District of Texas.

**E.      Memorial Hermann and BCBS resolve the 2017 lawsuit, and then begin to address the Remaining BAV Claims.**

39.      Following two-plus years of litigation, Memorial Hermann and BCBS resolved the 2017 Lawsuit and the BAV Claims that were at issue in that lawsuit.  That case was dismissed on October 18, 2019.  *See id.*, Dkt. 80.

40.      There were, however, remaining BAV Claims ("Remaining BAV Claims") that were not resolved by the 2017 Lawsuit.  Memorial Hermann and BCBS then reached agreement on how to resolve the Remaining BAV Claims and exchanged information to resolve the Remaining BAV Claims.

41.      Rather than review every single unpaid BAV Claim and determine the specific amount owed, the parties agreed that BCBS would pay Memorial Hermann a defined percentage of the expected variance on all the Remaining BAV Claims.  The parties acknowledged that the intent of this agreement was to avoid the time associated with a claim-by-claim review of the Remaining BAV Claims.  The parties further agreed that complete settlement of the unpaid BAV Claims would take place in phases, with Memorial Hermann sending BCBS spreadsheets identifying the Remaining BAV Claims and their total expected variance, from which the defined percentage amount would be calculated and then paid by BCBS.

42.      Pursuant to this agreement, Memorial Hermann submitted on June 5, 2020 a spreadsheet for the first set of Remaining BAV Claims identifying the total expected variance. BCBS then reviewed, calculated and paid the agreed amount on January 27, 2021.

1196262.4

43.     Memorial Hermann then submitted the second and final spreadsheet of Remaining BAV Claims on July 16, 2021.  In response, BCBSTX provided feedback on various accounts and as a result, MHHS reviewed and removed accounts for which it agreed required exclusion. On January 10, 2022, MHHS submitted an updated spreadsheet of BAV Claims, with a total variance of $3,143,271.64.

44.     Rather than pay the agreed amount—as the parties had agreed and how BCBS previously had done—BCBS further contested a number of the Remaining BAV Claims and offered to pay significantly less than the previously agreed and used percentage of the claims' expected variance.  BCBS has paid nothing for this final set of Remaining BAV Claims.

45.     Despite several additional attempts to resolve this dispute by Memorial Hermann, BCBS refuses to pay the Remaining BAV Claims. Memorial Hermann now files suit to recover payment for that final set of Remaining BAV Claims.

## 5.     Causes of Action

### A.     Count One – Breach of Express Contract

46.     Memorial Hermann incorporates paragraphs 1–45 as if stated verbatim herein.

47.     BCBS and Memorial Hermann entered into the BAV HMO Agreement, based on their oral and written communications.  The material terms of the BAV HMO Agreement are that BCBS would reimburse Memorial Hermann for all services provided to BAV insureds at Memorial Hermann using the PAR reimbursement rate.

48.     BCBS breached the BAV HMO Agreement by failing to pay claims for healthcare services provided to BAV plan members.

49.     Memorial Hermann seeks to recover all appropriate damages for BCBS's breach, including but not limited to the full amount of the denied claims at the PAR rate, currently more than $3 million, plus interest.

50.     Alternatively, BCBS and Memorial Hermann, through their oral and written communications, also entered into a valid and binding agreement for reimbursement of the BAV Claims remaining unresolved after the 2017 Lawsuit.  Memorial Hermann agreed to submit spreadsheets of the Remaining BAV Claims to BCBS, and BCBS agreed to calculate and pay a percentage of the Remaining BAV Claims' total variance amount.

51.     BCBS tendered payment for the first set of the Remaining BAV Claims at the agreed amount, but refuses to tender payment for the second and final set.  By refusing to pay the agreed percentage of the total variance for the final set of Remaining BAV Claims, BCBS has breached the parties' agreement.

52.     As a result of BCBS's breaches, Memorial Hermann has suffered actual damages.

**B.     Count Two – Breach of Implied Contract**

53.     Memorial Hermann incorporates paragraphs 1-45 as if stated verbatim herein.

54.     In the alternative to Count One, BCBS and Memorial Hermann entered into an implied contract that BCBS would reimburse Memorial Hermann for all services provided to BAV insureds at Memorial Hermann using the PAR reimbursement rate.  The parties' mutual agreement and meeting of the minds is evidenced by, among other things, BCBS's payment at the PAR rate for the medical treatment that Memorial Hermann provided to BAV insureds for approximately 18 months.

55.     BCBS breached its agreement with Memorial Hermann by failing to pay claims for healthcare services provided to BAV plan members.

56.     Memorial Hermann seeks to recover all appropriate damages for BCBS's breach, including but not limited to the full amount of the denied claims, currently about $3,000,000, plus interest.

1196262.4

57.     Also in the alternative to breach of the implied BAV HMO Agreement, BCBS and Memorial Hermann entered into an implied contract for the Remaining BAV Claims as set forth above.  The parties' mutual agreement and meeting of the minds is evidenced by, among other things, BCBS's payment of the first BAV Remaining Claims that Memorial Hermann submitted at the agreed percentage of variance.

58.     BCBS breached its agreement with Memorial Hermann by failing to tender payment for the final set of Remaining BAV Claims.

59.     As a result of BCBS's breach, Memorial Hermann has suffered actual damages.

C.      **Count Three Quantum Meruit/Quantum Valebant**

60.     Memorial Hermann incorporates paragraphs 1-45 as if stated verbatim herein.

61.     In the alternative to breaches of contract, in the event they are determined unenforceable, Memorial Hermann seeks to recover via quantum meruit for the value of services and materials provided, and via quantum valebant for the value of goods provided.

62.     To the extent BCBS denies the parties agreements, Memorial Hermann nevertheless has rendered valuable health services and materials to BCBS's BAV Plan insureds. This provision of medical services and materials was intended to and in fact benefited BCBS in that its insureds received care and treatment for which BCBS was obligated to pay.

63.     BCBS accepted the health services that Memorial Hermann provided to its insureds and promised, expressly or impliedly, to pay Memorial Hermann for providing services to its BAV Plan insureds.  Texas law also requires BCBS to pay out-of-network healthcare providers at the usual and customary rate or at an agreed rate for emergency services and, when BCBS does not approve or deny within one hour of the request, for post-stabilization services that are rendered by the provider.  *See* Tex. Ins. Code. § 1271.155. BCBS therefore had reasonable notice that Memorial Hermann expected compensation for services it provided.

16

64.     As a result of BCBS's failure to pay all of Memorial Hermann's charges at the agreed-upon rate, Memorial Hermann has been underpaid and seeks to recover all appropriate damages, which currently are valued at more than $3 million for the Remaining BAV Claims.

**D.      Count Four -- Promissory Estoppel**

65.     Memorial Hermann incorporates paragraphs 1-45 as if stated verbatim herein.

66.     BCBS promised to pay Memorial Hermann for the Remaining BAV Claims.  It was foreseeable to BCBS that Memorial Hermann would rely on this promise because of the statutory requirements and the parties' past conduct and actions.

67.     Memorial Hermann substantially relied on BCBS's promise to its detriment by continuing to provide millions of dollars of medical care to BAV Plan insureds.

68.     Memorial Hermann seeks to recover its actual damages, consequential damages, and costs incurred from BCBS's actions.

**E.      Count Five – Unjust Enrichment**

69.     Memorial Hermann incorporates paragraphs 1-45 as if stated verbatim herein.

70.     BCBS has been unjustly enriched to the extent of the medical care that Memorial Hermann has provided for the benefit of BCBS's BAV Plan members for which BCBS has not paid.

71.     It would be inequitable and unjust to allow BCBS to collect and retain premiums charged to BAV Plan members, fail to provide coverage for services rendered to BAV Plan members, and then attempt to shift responsibility for these services to Memorial Hermann or to BAV Plan members individually.  BCBS is being unjustly enriched at Memorial Hermann's expense.

72.     Memorial Hermann seeks to recover its actual damages, consequential damages, and costs incurred from BCBS's actions.

1196262.4

**F.      Count Six – Declaratory Judgment**

73.      Memorial Hermann incorporates paragraphs 1-45 as if stated verbatim herein.

74.      The Texas Declaratory Judgment Act and Federal Declaratory Judgment Act authorize this Court to declare the rights, status, and other legal relations of the parties, whether or not further relief is or could be sought.  *See* Tex. Civ. Prac. & Rem. Code § 37.003; *see also* 28 U.S.C. § 2201.  Such a declaration has the force and effect of a final judgment or decree.  *Id.*

75.      A dispute exists regarding whether BCBS is permitted to deny Memorial Hermann's claims as to alleged "post-stabilization" treatment that was rendered to a BAV plan member at Memorial Hermann.  BCBS claims that it can deny such claims after the fact, while Memorial Hermann maintains that BCBS cannot because it violates the parties' agreement and because BCBS did not comply with the Texas Insurance Code requirements for these circumstances.

76.      Accordingly, the Court should declare the following:

a.      If BCBS does not approve or deny within one hour of Memorial Hermann's request for authorization or approval for treatment of a BAV plan member who has or had an emergency medical condition, as required by Texas law, BCBS is not permitted to deny the claim submitted by Memorial Hermann for treatment given to that BAV member on the basis that the claim is for post-stabilization treatment that should have been provided at an in-network facility.

b.      If BCBS denies within one hour of Memorial Hermann's request for authorization or approval of treatment for a BAV plan member who has or had an emergency medical condition, then BCBS must initiate and

18

coordinate the transfer of a BAV plan member to a facility of BCBS's choosing.

## 6.   ATTORNEY'S FEES

77.     Memorial Hermann was forced to retain counsel and prosecute this lawsuit as a result of BCBS's breaches of contract.  Memorial Hermann therefore seeks to recover its costs and attorneys' fees pursuant to Texas Civil Practice & Remedies Code § 38.001(b)(8).

78.     Pursuant to Texas Civil Practice and Remedies Code § 37.009, Memorial Hermann requests that the Court award it costs and reasonable and necessary attorneys' fees as are equitable and just.

## 7.   TEXAS PROMPT PAYMENT PENALTIES

79.     Texas law requires prompt payment of claims submitted by healthcare providers for services provided to the HMO's members. *E.g.*, Tex. Ins. Code § 843.336 *et seq*.  HMOs that violate the prompt payment statute must pay a penalty to the healthcare provider. *E.g.*, Tex. Ins. Code § 843.342.

80.     Memorial Hermann seeks available damages in the form of the statutory penalty in an amount to be determined in accordance with the Act, plus attorneys' fees, costs, interest, and such other relief as may be just and proper. *See e.g.,* Tex. Ins. Code § 843.343.41.

## 8.   CONDITIONS PRECEDENT

81.     All conditions precedent to recovery by Memorial Hermann have been satisfied or have been frustrated or waived by BCBS.

## 9.   JURY DEMAND

82.     Memorial Hermann demands a jury trial.

## 10.    PRAYER

79.    Plaintiff Memorial Hermann Health System respectfully requests that it be awarded its actual damages, interest, costs, and attorneys' fees, and all other relief, at law or in equity to which it is entitled.

Respectfully submitted,

SMYSER KAPLAN & VESELKA, L.L.P.

*/s/ Jeff Potts*
Jeff Potts
State Bar No. 00784781
jpotts@skv.com
Jarod R. Stewart
State Bar No. 24066147
jstewart@skv.com
Jacquelyn R. Rex
State Bar No. 24098317
jrex@skv.com
717 Texas Ave., Suite 2800
Houston, Texas 77002
Telephone: (713) 221-2300
Fax: (713) 221-2320

**ATTORNEYS FOR PLAINTIFF MEMORIAL HERMANN HEALTH SYSTEM**

1196262.4